UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ARRIEONA BEAL,

        Plaintiff,

                                    Case No. 22-cv-378-pp

      v.

ARMSTRONG CONTAINERS, INC.,
EI DUPONT DENEMOURS & CO.,
JERRY MITCHELL, HATTIE MITCHELL,
THE ATLANTIC RICHFIELD COMPANY
and THE SHERWIN-WILLIAMS COMPANY,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND (DKT. NO. 11), AWARDING PLAINTIFF COSTS AND ACTUAL EXPENSES UNDER 28 U.S.C. §1447(C), DENYING PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 (DKT. NO. 35) AND REMANDING CASE TO MILWAUKEE COUNTY CIRCUIT COURT**

---

On June 2, 2021, the plaintiff sued Hattie and Jerry Mitchell ("the landlord defendants") for negligence in Milwaukee County Circuit Court. Dkt. No. 1-1 at 6-11. The plaintiff alleged damages stemming from her exposure to white lead carbonate ("WLC") while living as a child at the landlord defendants' property—1017 N. 29th St. Milwaukee, Wisconsin. Id. On August 24, 2021, the plaintiff filed an amended complaint that added Armstrong Containers, Inc., E.I. Dupont Denemours & Co., the Atlantic Richfield Co. and Sherwin-Williams Co. ("the industry defendants") as defendants. Id. at 49-66. The amended complaint also added three counts against the industry defendants. Id.

On March 25, 2022, the industry defendants filed a notice of removal to federal court.[1] Dkt. No. 1. Subsequently, the plaintiff filed a motion to remand. Dkt. No. 11. In the motion, the plaintiff requested costs and any actual expenses under 28 U.S.C. §1447(c). Id. at 14-15. After the industry defendants filed a response opposing the motion to remand (Dkt. No. 33), the plaintiff filed a motion for sanctions under Fed. R. Civ. P. 11 (Dkt. No. 35). This order grants the motion to remand, awards the plaintiff costs and any actual expenses under 28 U.S.C. §1447(c), remands the case to Milwaukee County Circuit Court and denies the plaintiff's motion for sanctions.

## I. Notice of Removal (Dkt. No. 1)

Although both the plaintiff and the landlord defendants are citizens of Wisconsin (Dkt. Nos. 1-1 at 6-7, 1-13 at 10), the industry defendants filed a notice removing case under 28 U.S.C. §§1441 and 1446 based on federal diversity jurisdiction (Dkt. No. 1 at 1).[2] The industry defendants contended that the plaintiff had fraudulently joined the landlord defendants to defeat the federal diversity jurisdiction that otherwise would exist under 28 U.S.C. §1332. Dkt. No. 1 at 1. In support of this theory, the industry defendants detailed years of litigation allegedly pursued by plaintiff's counsel against the industry

---

[1] Sherwin-Williams filed the notice of removal and all subsequent briefing in this federal case. Because the other industry defendants consented to removal and have had their interests represented by Sherwin-Williams (Dkt. No. 1-14), this order collectively refers to this group, including Sherwin-Williams, as "the industry defendants" except when necessary to distinguish Sherwin-Williams.

[2] The industry defendants confirm that none of them are incorporated or maintain their principal place of business in Wisconsin. Dkt. 1 at 9-10.

Case 2:22-cv-00378-PP   Filed 09/30/23   Page 2 of 30   Document 42

defendants, much of which occurred in federal court. Id. at 2-4. The industry defendants claimed that the plaintiff had strategized to sue an in-state defendant (the landlord defendants) to avoid the effects of a recent unfavorable ruling by the Seventh Circuit. Id.; see also Burton v. E.I. du Pont de Nemours & Co., Inc., 994 F.3d 791, 813 (7th Cir. 2021) (interpreting Wisconsin law to mean "a paint manufacturer cannot be liable under the risk-contribution theory for selling a finished product that contains another company's white lead carbonate").

The industry defendants argued that the plaintiff had fraudulently joined the landlord defendants because: (1) the plaintiff has no reasonable possibility of recovering from the landlord defendants and (2) the plaintiff has no real intent to pursue her claim against the landlord defendants. Dkt. No. 1 at 4-9. As to the first argument, the industry defendants asserted that the plaintiff's cause of action against the landlord defendants is precluded due to three previous small-claims cases brought by the plaintiff's father against the landlord defendants alleging negligence for exposing the plaintiff to lead. Id. at 4-6. Although the first two cases brought by the plaintiff's father were dismissed, the industry defendants contended the third case ("the 2011 lawsuit") ended in an "apparent judgment," which now precludes additional litigation between the plaintiff and the landlord defendants. Id. As to the second argument, the industry defendants claimed that the plaintiff has not served any discovery requests on the landlord defendants and that the risk-contribution framework on which the plaintiff relies in proceeding against the

3

industry defendants does not apply to the landlord defendants. Id. at 6-9. The industry defendants maintained that either of these arguments demonstrates that the plaintiff fraudulently joined the landlord defendants (Id. at 4-9), and that all properly joined parties have complete diversity (Id. at 9-13).

## II.   Plaintiff's Motion to Remand (Dkt. No. 11)

### A.   Standard

"On a motion to remand, the party invoking removal authority bears the burden of establishing the court's jurisdiction, the removal statute is strictly construed, and all doubt is resolved in favor of remand." Holcombe v. Smithkline Beecham Corp., 272 F. Supp. 2d 792, 795 (E.D. Wis. 2003). Under 28 U.S.C. §1441(b), removal of a state court case is proper where "the district courts . . . have original jurisdiction." Under 28 U.S.C. §1332(a)(1), federal courts have original jurisdiction where the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. Federal jurisdiction under 28 U.S.C. §1332 requires complete diversity of citizenship. Poulos v. Naas Foods, Inc., 959 F.2d 69, 71 (7th Cir. 1992). In other words, jurisdiction under §1332 exists only where "no party share[s] common citizenship with any party on the other side of the dispute." Id.

But a plaintiff "may not join an in-state defendant solely for the purpose of defeating federal diversity jurisdiction." Schwartz v. State Farm Mut. Auto. Ins. Co., 174 F.3d 875, 878 (7th Cir. 1999) (citing Gottlieb v. Westin Hotel Co., 990 F.2d 323, 327 (7th Cir. 1993)). A party joined for this purpose is considered fraudulently joined and a court will disregard that joinder for

4

purposes of determining whether there is complete diversity. <u>Poulos</u>, 959 F.2d at 73. Under the fraudulent joinder doctrine, a district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." <u>Schur v. L.A. Weight Loss Ctrs., Inc.</u>, 577 F.3d 752, 763 (7th Cir. 2009) (quotation omitted). If a district court determines that it does not have subject-matter jurisdiction over the removed case, it must remand to state court. 28 U.S.C. §1447(c).

B.    <u>Parties' Arguments</u>

1.    *The Plaintiff's Motion for Remand (Dkt. No. 11)*

The plaintiff argues that the industry defendants have not met their heavy burden to prove that the landlord defendants were fraudulently joined and therefore that this court should remand the case for a lack of diversity jurisdiction. Dkt. No. 11 at 6. The plaintiff contends that the previous lawsuits brought by the plaintiff's father against the landlord defendants do not preclude the current case because the plaintiff was not a proper party to any of those suits.  <u>Id.</u> at 9-11. The plaintiff asserts that the industry defendants have not established that a final judgment was entered in any of the cases brought by the plaintiff's father. <u>Id.</u> at 3-4. The plaintiff asserts that the first two cases were dismissed, and that the file for the 2011 lawsuit says only "see judgment roll," with no description of what, if any, judgment was entered. <u>Id.</u> The plaintiff contends that <u>Thomas</u> *ex rel.* <u>Gramling v. Mallett</u>, 285 Wis. 2d 236, 298-99

(Wis. 2005), establishes that a plaintiff may seek remedy for exposure to WLC from both a landlord and the manufacturer of the WLC.

Next, the plaintiff argues that the Seventh Circuit has not adopted the "no real intent to prosecute" test. Dkt. No. 11 at 6-7. The plaintiff claims that although "[d]iscovery is at its early stages," she has engaged in various actions to pursue her claim against the landlord defendants. Id. at 4. These actions include, but are not limited to, confirming the landlord defendants are the record owners of the subject property (Dkt. No. 13-2), filing an *ex parte* order to prevent the razing of the subject property (Dkt. No. 13-4) and having an assessor confirm the presence of WLC in the subject property (Dkt. No. 13-3).

The plaintiff asserts that the industry defendants "improperly conflate[]" her with her attorney. Dkt. No. 11 at 7. The plaintiff asserts that her attorney's jurisdictional strategies in previous WLC litigation—*e.g.*, suing in federal instead of state court—do not bind his strategic options in the current case. Id. at 7-8. The plaintiff emphasizes that each plaintiff is entitled to her choice of venue unless the county chosen is improper. Id. at 7-8. The plaintiff then accuses the industry defendants of "dilatory" tactics intended to "foreclose [the plaintiff]'s ability to have her case tried in any court at all." Id. at 13. The plaintiff postulates that "[i]t is little wonder" that the industry defendants would want to remove this case because "[t]he federal courts have recently so misinterpreted Wisconsin law applicable to WLC cases that plaintiffs seeking remedies for injuries from WLC have little recourse there." Id. Finally, the plaintiff requests costs and actual expenses incurred as a result of the industry

6

defendant's removal notice because the industry defendants "[knew]" that the court lacks subject-matter jurisdiction "and yet attempt[ed] to remove the case on the basis of flights of fancy, if not outright lies." Id. at 15.

2.    *The Industry Defendant's Response (Dkt. No. 33)*

The industry defendants claim that "[p]laintiff's counsel have been filing meritless claims against Sherwin-Williams in Wisconsin for over twenty years." DKt. No. 33 at 9. The industry defendants detail how this extensive litigation history leads them to believe that the plaintiff is attempting to avoid unfavorable federal precedent by fraudulently joining the landlord defendants. Id. at 12-14. The industry defendants assert that the "[p]laintiff's entire litigation strategy depends on destroying the diversity between her and the [industry] [d]efendants." Id. at 23.

The industry defendants reaffirm that claim preclusion—stemming from the 2011 lawsuit against the landlord defendants—means the plaintiff has no reasonable possibility of prevailing against the landlord defendants. Id. at 17-22. They note that when the plaintiff's father sued the landlord defendants in 2011 the complaint caption stated that the plaintiff's father was acting "for Arrieona Beal." Dkt. Nos. 33 at 21, 1-10 at 4. The industry defendants assert that this confirms that the plaintiff was a party to the 2011 lawsuit. Dkt. No. 33 at 21. To demonstrate that the 2011 lawsuit reached a "final resolution," the industry defendants claim that "the 2011 [l]awsuit was entered on the 'judgment roll' at its conclusion and dismissed, and that [the plaintiff's] parents—who had by that time filed three lawsuits based on [p]laintiff's alleged

7

lead exposure—never filed another case against the [landlord defendants]." Id. The industry defendants argue that if the plaintiff "believed a judgment on her claim in the 2011 [l]awsuit lacked sufficient process because of her age," then she needed to file a motion to vacate the judgment on her behalf shortly after reaching the age of majority. Id. at 18-19. They contend that the plaintiff missed the deadline to vacate the judgment and that her current claim against the landlord defendants is precluded. Id. at 19.

The industry defendants assert that the plaintiff has no intent to secure judgment against the landlord defendants. Id. at 22. The industry defendants claim that the plaintiff's approach to pleading this case demonstrates that the plaintiff's counsel intended to use the landlord defendants solely to block removal. Id. at 23-24. They allege that once the plaintiff effectuated service on the landlord defendants, she diverted her full attention to pursuing the industry defendants. Id. at 24. The industry defendants argue that the plaintiff has treated the landlord defendants "as if they do not exist" since joining the industry defendants. Id. at 24-25. The industry defendants assert that the plaintiff has not served a single discovery request or the two motions she filed in federal court on the landlord defendants. Id. at 24-25. The industry defendants dismiss any efforts the plaintiff has taken to pursue the landlord defendants as "discovery her counsel conducts in every case against the [industry] [d]efendants," and assert that those efforts actually are intended to further the plaintiff's claims against the industry defendants. Id. at 25-28.

3. *The Plaintiff's Reply Brief (Dkt. No. 37)*

The plaintiff replies that she has a possibility of succeeding against the landlord defendants and that she is intent on securing a judgment against them. Dkt. No. 37. The plaintiff denies joining the landlord defendants solely to defeat diversity jurisdiction. Id. at 7. She contends that, although she "has every reason to want to litigate in state court where she stands some chance of having critical matters of Wisconsin law interpreted properly," she also fully intends to pursue the landlord defendants. Id. The plaintiff disputes the industry defendants' characterization of her discovery efforts against the landlord defendants as "discovery her counsel conducts in every case against the [industry] [d]efendants." Id. at 5-6. For example, the plaintiff points to her expert's report finding WLC in the landlord defendants' property as discovery necessary to further her claims against the landlord defendants as well as the industry defendants. Id. Finally, the plaintiff disagrees with the industry defendants' claim that she "presented no evidence disputing claim preclusion." Id. at 7. The plaintiff acknowledges that she cited "*precisely the same* log of the small claims court as [the industry defendants]," but argues that the 2011 lawsuit's log does not support the industry defendant's argument. Id. at 7-8. The plaintiff asserts that the log shows that she was not a named party in the 2011 lawsuit and that the log does not clarify what, if any, judgment the small claims court entered. Id.

C.    Analysis

1.    *Fraudulent Joinder*

Despite its name, the fraudulent joinder doctrine does not require a showing that the plaintiff acted fraudulently or in bad faith. Poulos, 959 F.2d at 73. But "[a]n out-of-state defendant who wants to remove must bear a *heavy burden* to establish fraudulent joinder." Id. (emphasis added). There are two principal methods for the party seeking removal to establish fraudulent joinder, only one of which has been adopted by the Seventh Circuit. See id.; In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006).

The Seventh Circuit has adopted the "any reasonable possibility" of success test. Poulos, 959 F.2d at 73. Under this test, the party seeking removal "must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." Id. This fraudulent joinder inquiry is an "act of prediction" which asks if there is "*any reasonable possibility* that a state court would rule against the non-diverse defendant[.]" Id. (emphasis added). The Seventh Circuit has described the removing defendant's burden as a requirement to show that the plaintiff's case against the in-state defendant is "utterly groundless," Walton v. Bayer Corp., 643 F.3d 994, 999 (7th Cir. 2011), or that the plaintiff's claim has "no chance of success," Thornton v. M7 Aerospace LP, 796 F.3d 757, 765 (7th Cir. 2015). But a party alleging fraudulent joinder "need not negate any possible theory that [the plaintiff] might allege in the future: only his present allegations count." Poulos, 959 F.2d at 74.

10

Other courts have adopted the "no real intent" to prosecute test. See Wright & Miller, 14C FED. PRAC. & PROC. JURIS. §3723.1 n.5 (Rev. 4th ed.) (listing circuits and district courts that have adopted this approach). Under this approach, the party seeking removal may show that the plaintiff has "no real intention in good faith to prosecute the action against the [in-state] defendant or seek a joint judgment." In re Briscoe, 448 F.3d at 216 (quotation omitted). Using this test, courts look to whether "the plaintiff's collective litigation actions, viewed objectively, clearly demonstrate a lack of good faith intention to pursue a claim to judgment against a non-diverse defendant." Faulk v. Husqvarna Consumer Outdoor Prod. N.A., Inc., 849 F. Supp. 2d 1327, 1331 (M.D. Ala. 2012). The objective circumstances that courts have considered include whether a plaintiff "contriv[ed]" to avoid federal jurisdiction; the role non-diverse defendants play in the pleadings; and the extent to which a plaintiff has engaged in meaningful discovery against the non-diverse defendants. Cogan v. Allianz Life Ins. Co. of N. Am., 592 F. Supp. 2d 1349, 1356 (N.D. Ala. 2008); Faulk, 849 F. Supp. 2d at 1331; Escuadra v. Geovera Specialty Ins. Co., 739 F. Supp. 2d 967, 975 (E.D. Tex. 2010).

As the court explains below, the industry defendants have not met the "heavy burden" necessary to establish fraudulent joinder under either test. See Poulos, 959 F.2d at 73.

a.    Any Reasonable Possibility of Success

As a preliminary issue, the industry defendants argue that the plaintiff cannot sue them and the landlord defendants in the same case because "it

11

would introduce competing legal standards." Dkt. No. 1 at 7. The industry defendants argue that the "risk-contribution framework" discussed in Thomas, 285 Wis. 2d at 316-20, applies only to the manufacturers of WLC, not to landlords, and that trying both together would introduce competing standards and "force counsel to dilute their proof against the [industry defendants].". Dkt. Nos. 1 at 7, 33 at 27-28. But the Wisconsin Supreme Court held in Thomas that a plaintiff could pursue WLC manufacturers even after settling with the landlord's insurers. Thomas, 285 Wis. 2d at 299 ("[T]he fact that Thomas may have been 'wronged' by (and received a remedy from) his landlord simply has no bearing on whether Thomas has been 'wronged' by one or more Pigment Manufacturers."). The plaintiff here is claiming that the landlord defendants acted negligently by—among other things—failing to maintain the subject property, failing to remediate the hazard and failing to warn the plaintiff's parents about the potential harm. Dkt. 1-1 at 10. These claims against the landlord defendants are supported by Wisconsin law. See Antwaun A. *ex rel.* Muwonge v. Heritage Mut. Ins. Co., 228 Wis. 2d 44, 54-63 (Wis. 1999) (holding that a plaintiff who ingested paint chips containing lead at a rented apartment could pursue a negligence claims against a landlord).

The industry defendants also have not explained why the plaintiff cannot bring claims against both the landlord defendants and the industry defendants when the plaintiff's alleged injury arises from a common series of facts. See Fed. R. Civ. P. 20(a)(2) (allowing for the joinder of defendants if "any right to relief . . . aris[es] out of the same transaction, occurrence, or series of

12

transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action"); Wis. Stat. §803.04 (providing similar grounds for permissive joinder).

Nor have the industry defendants demonstrated how the "apparent judgment" in the 2011 lawsuit brought by the plaintiff's father precludes the plaintiff's current claim against the landlord defendants. That failure relates to the question of whether the plaintiff has no reasonable possibility of prevailing against the landlord defendants. Under Wisconsin law, the "doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." Teske v. Wilson Mut. Ins. Co., 387 Wis. 2d 213, 225 (Wis. 2019) (quotation omitted). "The burden of proving claim preclusion is upon the party asserting its applicability." Pasko v. City of Milwaukee, 252 Wis. 2d 1, 15 (Wis. 2002). The party asserting claim preclusion must establish: "(1) an identity between the parties or their privies in the prior and present lawsuits; (2) an identity of the causes of action in the two lawsuits; and (3) a final judgment on the merits in a court of competent jurisdiction." Teske, 387 Wis. 2d at 226; see also Wickenhauser v. Lehtinen, 302 Wis. 2d 41, 61 (Wis. 2007) (noting "there is an identity of parties when the parties are, for the most part, identical" (quotation omitted)); State v. Miller 274 Wis. 2d 471, 490 (Wis. Ct. App. 2004) (establishing that "final judgment" for claim preclusion means a judgment that "ends the litigation on the merits of the claim or claims"). The

industry defendants have not shown an identity of parties or the existence of a final judgment in the 2011 lawsuit.

As to identity of parties: the plaintiff persuasively analogizes the facts in this case to those in Jensen *ex rel.* Stierman v. McPherson, 258 Wis. 2d 962 (Wis. Ct. App. 2002). Dkt. Nos. 11 at 10-11, 37 at 7-8. The Jensen court held that Erik Jensen (a minor) was not a party-plaintiff in his parents' initial medical malpractice action against the same defendants that Erik Jensen later sued. Jensen, 258 Wis. 2d at 973. The Jensen court found that "there are two separate causes of action when a minor is injured—the minor's and the minor's parents." Id. at 971. The Jensen court explained, "[t]he minor's cause of action for physical injury and the parents' causes of action for the invasion of the parents' interests are separate in the sense that each is predicated upon the invasion of different interests of different persons." Id. In determining that Erik Jensen was not a party to the previous lawsuit, the Jensen court observed that the caption of the complaint in the previous lawsuit had identified the plaintiffs as "KATHLEEN JENSEN and BRADLEY JENSEN *individually and as mother and father and next friend of* ERIK JENSEN a minor, and the State of Wisconsin, Department of Health and Family Services." Id. at 973. The Jensen court concluded that "[i]t is not enough to list a person in the caption" after noting that "[n]owhere in the caption is Erik himself named as a plaintiff; rather, Erik's name appears only to explain why his parents were entitled to bring this suit." Id.

14

The records the industry defendants have provided from the 2011 lawsuit do not demonstrate that the plaintiff was a party to that suit, or indicate whether the plaintiff's father brought a "cause of action for [the plaintiff's] physical injury" or a "cause[] of action for the invasion of his parent[al] interests." See id. at 971. The records from the 2011 lawsuit list only the plaintiff's parents and the landlord defendants as parties.[3] Dkt. No. 1-10. The industry defendants correctly note that under "PLAINTIFF (NAME AND ADDRESS)" at the top of the first page of the complaint in the 2011 lawsuit, someone handwrote the words "FOR Ebonie Beal" next to the names Darnell Beal and Elinda Beal, and handwrote "for Arrieona Beal" next to the street address. Id. at 4. But the Jensen court held that "[i]t is not enough to list a person in the caption." Jensen, 258 Wis. 2d at 973. It seems that the plaintiff's "name appears only to explain why [her] parents were entitled to bring [that] suit."[4] Id.

_____

[3] The court was unable to find the 2011 case on the Wisconsin Circuit Court Access Program (CCAP) (https://wcca.wicourts.gov). The court searched the 2011 lawsuit on Westlaw, and the result was not a typical Westlaw "case," but appears to be a reflection of the small claims docket one would expect to see on CCAP. That result lists only the plaintiff's parents and the landlord defendants as parties. See Darnell Beal, et al. v. Hatti Mitchell, et al., Milwaukee County Circuit Court, 2011SC019223 (listing under "participant information" the following names: "Darnell Beal," "Elinda Beal," "Hatti Mitchell" and "Jerry Mitchell"). https://1.next.westlaw.com/Document/IBDEA4D44B75F11E090 E590FE1745B4C9/View/FullText.html?transitionType=FolderItem&contextDat a=(cid.7b9b96bed94d41189745f19ce9745650*oc.Default).

[4] The industry defendants argue that the plaintiff was required to file a motion to vacate the "judgment" in the 2011 lawsuit if she wanted to avoid claim preclusion. Dkt. No. 33 at 18-19. The industry defendants cite Wis. Stat. §803.01(3) ("If a party to an action or proceeding is a minor, or if a party is adjudicated incompetent or alleged to be incompetent, the party shall appear

Case 2:22-cv-00378-PP   Filed 09/30/23   Page 15 of 30   Document 42

The industry defendants have not established identity of parties. <u>See</u>
<u>Teske</u>, 387 Wis. 2d at 226.

Nor have the industry defendants established that the 2011 lawsuit
resulted in "a final judgment on the merits." <u>See</u> <u>id.</u> The industry defendants
correctly note that the records from the 2011 lawsuit—unlike the records for
the two other cases the plaintiff's father brought against the landlord
defendants (Dkt. Nos. 1-8, 1-9)—say "SEE JUDGMENT ROLL" and indicate
that the case was "dismissed." Dkt. No. 1-10 at 2-3. But the industry
defendants did not produce the "judgment roll" or describe the nature of the
judgment (if, in fact, there was one). The industry defendants' own language
signals their uncertainty regarding the outcome of the 2011 lawsuit. For
example, in their notice to remove, the industry defendants stated that "the
Circuit Court *appears* to have entered judgment in this third suit" (Dkt. No. 1
at 5 (emphasis added)) and that "[t]he *apparent* judgment precludes additional
litigation between [the] [p]laintiff and the [l]andlord [d]efendants" (Dkt. No. 1 at
6 (emphasis added)). The industry defendants argue that the fact that the
plaintiff's father "never filed another case against the [landlord defendants]"
after the 2011 lawsuit "corroborates that the earlier litigation fully resolved the
claim against the [landlord defendants] arising from [the] [p]laintiff's alleged

_____

by an attorney, by the guardian of the estate of the party who may appear by
attorney, or by a guardian ad litem who may appear by an attorney." (emphasis
added)); <u>see also</u> §803.01(3)(c)(2) (allowing the court to vacate the entry of
judgment or a final order if it finds a minor "was not represented in the action
or proceeding by an attorney of record or otherwise represented *as provided in*
*par. (a)*" (emphasis added)). But because the 2011 lawsuit's records do not list
the plaintiff as "a party," Wis. Stat. §803.01(3) does not apply.

16

lead exposure." Dkt. No. 33 at 18. This argument amounts to the industry defendants asking the court to *infer* that a final judgment was entered, but it does not *establish* that a final judgment was entered.[5]

Whether the 2011 lawsuit ended in a final judgment is a question of fact that the court must resolve in the plaintiff's favor. *See* Poulos, 959 F.2d at 73 (noting that a party arguing the "any reasonable possibility" of success test must "show that, *after resolving all issues of fact and law in favor of the plaintiff*, the plaintiff cannot establish a cause of action against the in-state defendant" (emphasis added)). The industry defendants imply that the burden of proof lies with the plaintiff, saying that the "[p]laintiff failed to adduce any evidence disputing [the industry defendants]' assertion of claim preclusion." Dkt. No. 33 at 19. But it is the industry defendants, as the parties asserting preclusion, who bear the burden to establish the existence of the "final judgment" on which they rely for their claim preclusion argument, and thus their fraudulent joinder argument. *See* Pasko, 252 Wis. 2d at 15 ("The burden of proving claim preclusion is upon the party asserting its applicability."); Poulos, 959 F.2d at 73 ("An out-of-state defendant who wants to remove must bear a *heavy burden* to establish fraudulent joinder."); Holcombe, 272 F. Supp.

---

[5]To the extent that it can be relied upon, the Westlaw entry lists the 2011 lawsuit's "Case Status" as "Open," but also indicates that on August 1, 2022— a month after filing—there was "Other in-court activity Action dismissed." <u>See</u> <u>Darnell Beal, *et al.* v. Hatti Mitchell, *et al.*</u>, Milwaukee County Circuit Court, 2011SC019223. https://1.next.westlaw.com/Document/IBDEA4D44B75F11E 090E590FE1745B4C9/View/FullText.html?transitionType=FolderItem&context Data=(cid.7b9b96bed94d41189745f19ce9745650*oc.Default).

17

2d at 795 ("On a motion to remand, the party invoking removal authority bears the burden of establishing the court's jurisdiction, the removal statute is strictly construed, and all doubt is resolved in favor of remand.").

The industry defendants have not met the "heavy burden" necessary to establish fraudulent joinder through the "any reasonable possibility" of success test. See Poulos, 959 F.2d at 73.

> b.    Intent to Prosecute

Although the industry defendants assert that the plaintiff's "entire litigation strategy depends on destroying the diversity between her and the [industry] Defendants" (Dkt. No. 33 at 23), the industry defendants' suspicions about the plaintiff's "litigation strategy" do not affect the court's analysis. The court must determine only whether the plaintiff's claims against the landlord defendants are real and pursued in good faith. See Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000) ("Even if the [non-diverse parties] were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum. . . . It is enough that the claims be real, that the parties not be nominal.").[6] The court has found that the plaintiff's claims against the landlord

---

[6] The briefs show that the industry defendants and the plaintiff's counsel have a long history of litigation between them and that that history has resulted in mistrust and acrimony. See Dkt. No. 33 at 9 (the industry defendants claiming that the "[p]laintiff's counsel have been filing meritless claims against Sherwin-Williams in Wisconsin for over twenty years"). The parties have made arguments to this court based on this litigation history. Compare Dkt. No. 1 at 7 ("Over the last twelve years, Plaintiff's counsel has litigated in this Court risk-contribution claims under *Thomas* and against the [industry] [d]efendants on behalf of approximately 150 individual plaintiffs. In none of those cases did

18

defendants are not barred by the preclusion doctrine. So the question becomes whether "the plaintiff's collective *litigation actions*, viewed objectively, clearly demonstrate a lack of good faith intention to pursue a claim to judgment against" the landlord defendants. Faulk, 849 F. Supp. 2d at 1331 (emphasis added).

The plaintiff's collective litigation actions demonstrate a "good faith intention to pursue a claim to judgment against" the landlord defendants. See Id. The plaintiff has provided exhibits demonstrating that she has engaged in various actions to pursue her claim against the landlord defendants. These actions include, but are not limited to, confirming the landlord defendants are the record owners of the subject property (Dkt. No. 13-2), filing an *ex parte* order to prevent the razing of the subject property (Dkt. No. 13-4) and having an assessor confirm the presence of WLC in the subject property (Dkt. No. 13-3). The industry defendants characterize these actions as "discovery [the plaintiff's] counsel conducts in every case against the [industry] [d]efendants." Dkt. No. 33 at 25-28. Even if that characterization is accurate, it does not

---

counsel simultaneously pursue claims against a property owner."), with Dkt. No. 11 at 8-9 ("[T]o the extent that Defendant now raises the point [that plaintiff's counsel did not previously sue landlords] as a misguided effort to show no credible claim against landlords in WLC cases exist, that stinks of hypocrisy. Sherwin-Williams knows full well that it and the other Defendants in the federal litigation have attempted to avoid their own liability for years by seeking to place it on landlords."). This history is not relevant to the question before the court—whether the plaintiff fraudulently joined the landlords to destroy diversity—and personal attacks in briefs rarely further a party's cause with the court.

change the fact that these are actions the plaintiff must take to pursue claims against the landlords.

The industry defendants claim that "[f]or months, [the] [p]laintiff has treated the [landlord defendants] as if they do not exist in this case." Id. at 24-25. The industry defendants support this characterization by claiming that the "[p]laintiff has not served any discovery on the [l]andlord [d]efendants or taken any known steps to develop her claims against those individuals." Dkt. No. 1 at 8. But the industry defendants have not identified an example of this alleged failure to serve the landlord defendants—the court has found no affidavit from the landlords, and the court has not yet set a discovery schedule. The industry defendants also allege that "neither of the two motions [the] [p]laintiff filed in this Court, including the Motion to Remand, were served on the [landlord defendants]." Dkt. No. 33 at 24-25. The industry defendants put more stock in this fact than is warranted.

Because defendant Sherwin-Williams filed the notice of removal, it was Sherwin-Williams' responsibility to input the names of all parties into the docket. [7] The plaintiff filed the motion to remand on April 7, 2022. Dkt. No. 11.

---

[7] When a case is removed to federal court from state court, the *removing* party must complete steps similar to those completed by a party commencing a lawsuit in federal court. Those steps include naming the parties of the lawsuit. Eastern District of Wisconsin, Civil Case Opening Instructions, 11 (Revised 2011), https://www.wied.uscourts.gov/e-filing/instruction-manual (describing the process for a party commencing a civil suit in CM/ECF and describing "the entry of the party names" as "[p]erhaps the most critical piece of Online Case Opening"). Defendant Sherwin-Williams filed the notice of removal; it was Sherwin-Williams' responsibility to ensure that the names and addresses of all parties were entered into CM/ECF.

20

The plaintiff filed a certificate of service along with the motion to remand. Dkt. No. 11 at 18. This certificate of service states that she "electronically filed the foregoing document with the Clerk of the court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL." Id. But at that point—April 7, 2022—no *lawyer* had filed a notice of appearance on behalf of either landlord. This court's ECF Policies and Procedures state that "[p]arties proceeding pro se cannot file electronically unless authorized by the court." United States District Court for the Eastern District of Wisconsin Electronic Case Filing Policies and Procedures Manual I(A)(1). So even if Sherwin-Williams provided the landlords' addresses when filing the notice of removal, the landlords would not have received electronic notice or filing of the plaintiff's April 7, 2022 motion, because at that time, they were representing themselves.

On April 26, 2022—about three weeks after the plaintiff filed her motion to remand—Attorney Henry Koltz filed a notice of appearance on behalf of landlord Hattie Mitchell. Dkt. No. 31. The CM/ECF system shows that Attorney Koltz *did* receive electronic notice of the plaintiff's motion for sanctions. Dkt. No. 35. Landlord Jerry Mitchell still appears to be representing himself and thus is not receiving electronic notice of any filings. Any party wishing to serve defendant Jerry Mitchell must serve Jerry Mitchell via mail and file a certificate of service to verify the mailing.

While the court expects parties to familiarize themselves with the court's local rules and electronic filing procedures, the industry defendants have

provided no proof that the plaintiff *deliberately* failed to serve her motions on the landlords, as opposed to failing to grasp that the landlords could not be served electronically as long as they were representing themselves.

The defendants have not met the "heavy burden" necessary to establish fraudulent joinder through the "no real intent" test. See Poulos, 959 F.2d at 73; In re Briscoe, 448 F.3d at 216.

2.    *Grounds for Remand*

Having found that the industry defendants have not met their burden to prove fraudulent joinder, the court must determine whether remand is appropriate. Because the plaintiff and the landlord defendants both are residents of Wisconsin, the court lacks diversity jurisdiction and must remand the case to the Milwaukee County Circuit Court. See Poulos, 959 F.2d at 71 (noting that jurisdiction under §1332 exists only where "no party share[s] common citizenship with any party on the other side of the dispute"); 28 U.S.C. §1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

3.    *Costs and Expenses*

If warranted, the district court's "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). Generally, whether to award costs and fees "rests within the district court's discretion." Fincher v. S. Bend Hous. Auth., 578 F.3d 567, 569 (7th Cir. 2009). But a district court may award fees under §1447(c) "only where the removing party lacked an *objectively*

22

*reasonable basis* for seeking removal." <u>Martin v. Franklin Cap. Corp.</u>, 546 U.S. 132, 141 (2005) (emphasis added). The Seventh Circuit has held that, "[a]s a general rule, if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." <u>Lott v. Pfizer, Inc.</u>, 492 F.3d 789, 793 (7th Cir. 2007). By contrast, "if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees." <u>Id.</u> Under this standard, costs and expenses "may be awarded when removal is clearly improper, but not necessarily frivolous." <u>Jackson County Bank v. DuSablon</u>, 915 F.3d 422, 424 (7th Cir. 2019); <u>see also</u> <u>Martin</u>, 546 U.S. at 138-40 (explaining the rationale for fee-shifting in appropriate cases and indicating that §1447(c) does not create a strong presumption in favor or against awarding fees on remand).

The court will award the plaintiff costs and actual expenses under 28 U.S.C. §1447(c). As the court will explain below, the industry defendants' notice of removal was not frivolous, but it did lack an "objectively reasonable basis." <u>Martin</u>, 546 U.S. at 141. The binding case law regarding removal, fraudulent joinder and claim preclusion state clearly that the industry defendants bore the burden of proof on these issues. <u>See</u> <u>Holcombe</u>, 272 F. Supp. 2d at 795; <u>Poulos</u>, 959 F.2d at 73; <u>Pasko</u>, 252 Wis. 2d at 15. The binding case law for fraudulent joinder[8] establishes that the industry defendants had a

---

[8] As mentioned above, the Seventh Circuit has adopted only the "any reasonable possibility" of success test for fraudulent joinder. The court

23

"heavy burden" and that the court is required to "resolv[e] all issues of fact and law in favor of the plaintiff." Poulos, 959 F.2d at 73. Despite this heavy burden, the industry defendants grounded their arguments for claim preclusion, and by extension fraudulent joinder, on an "apparent judgment," then asked the court to *infer* the existence of a final judgment. More perplexing, the industry defendants appeared to attempt to shift their heavy burden onto the plaintiff, saying that the "[p]laintiff failed to adduce any evidence disputing [the industry defendants]' assertion of claim preclusion." Dkt. No. 33 at 19. The industry defendants' reliance on an "apparent judgment," combined with their attempts to shift the burden, convinces the court that they lacked an "objectively reasonable basis" to remove. See Martin, 546 U.S. at 141; Jackson County Bank, 915 F.3d at 424 (noting that under 28 U.S.C. §1447(c) costs and expenses "may be awarded when removal is clearly improper, but not necessarily frivolous"). Thus, under 28 U.S.C. §1447(c), the court awards the plaintiff costs and any actual expenses incurred in responding to the notice of removal.[9]

As the party who filed the notice of removal, the court will require only Sherwin-Williams to pay the plaintiff's costs and any actual expenses. Given

_____

addressed the industry defendants' "no real intent" argument for the sake of thoroughness.

[9] The plaintiff also asked the court to award her reasonable expenses, including attorney's fees, related to her motion for sanctions. Dkt. No. 35 at 13. Because the court is denying the plaintiff's motion for sanctions, the costs and expenses awarded to the plaintiff are limited to those directly related to responding to the notice of removal.

24

the circumstances of this case, the court has determined it would not be reasonable to compel the other industry defendants, who only consented to removal, to pay the plaintiff's costs and expenses. See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 934 F. Supp. 209, 214 (E.D. La. 1996) ("The court declines to assess costs or expenses against parties who simply consented to the removal."). Similarly, the landlord defendants will not be required to contribute to the plaintiff's costs and expenses.

### III. Plaintiff's Motion for Sanctions (Dkt. No. 35)

#### A. Standard

"Rule 11 requires that attorneys certify 'to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances' that their filings have adequate foundation in fact and law and lack an 'improper purpose.'" MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., 935 F.3d 573, 583 (7th Cir. 2019) (quoting Fed. R. Civ. P. 11(b)). A court may impose sanctions "on any attorney, law firm or party" that violates the rule. Fed. R. Civ. P. 11(c)(1).

The motion for sanctions must be brought separately from any other motion and must identify the conduct that violates Rule 11(b). Fed. R. Civ. P. 11(c)(2). The motion must be served, but it may not be filed if the challenged paper is corrected within twenty-one days after service. Id. If warranted, the court may award the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. Id. The sanction "must be limited to

what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

In evaluating a motion for sanctions, "the court must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." Cuna Mut. Ins. Soc. v. Off. & Pro. Emps. Int'l Union, Loc. 39, 443 F.3d 556, 560 (7th Cir. 2006). This inquiry leaves "no room for an 'empty head, pure heart' defense." N. Ill. Telecom, Inc. v. PNC Bank, N.A., 850 F.3d 880, 885 (7th Cir. 2017). An attorney or *pro se* litigant "cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." McGreal v. Vill. of Orland Park, 928 F.3d 556, 560 (7th Cir. 2019); see also Berwick Grain Co. v. Ill. Dep't of Agric., 217 F.3d 502, 504 (7th Cir. 2000) (noting that "for Rule 11 purposes a frivolous argument is simply one that is baseless or made without a reasonable and competent inquiry").

District courts vary in their approaches to the burden of persuasion for Rule 11 motions. Some district courts have assigned the burden of persuasion to the party bringing to the motion. In re Dairy Farmers of Am., Inc., 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (quoting Lundeen v. Minemyer, No. 09 C 3820, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010)). Other district courts have adopted a burden shifting approach. In such cases, the party seeking sanctions must establish a *prima facie* case that sanctionable conduct has occurred by filing a motion "based upon non-frivolous allegations for a Rule 11 sanction," at which point "the burden of proof shifts to the non-movant to show

26

it made a reasonable pre-suit inquiry into its claim." <u>Priddle v. Malanis</u>, No. 12-cv-5831, 2017 WL 2080328, at *2 (N.D. Ill. May 15, 2017) (St. Eve, J.) (quoting <u>Diego, Inc. v. Audible, Inc.</u>, 505 F.3d 1362, 1368 (Fed. Cir. 2007)).

    B.    <u>Parties' Arguments</u>

        1.    *Plaintiff's Motion (Dkt. No. 35)*

The plaintiff argues that she is entitled to Rule 11 sanctions because the industry defendants filed a notice of removal "replete with misstatements of fact and baseless legal arguments." Dkt. No. 35 at 2. The plaintiff expresses doubt that the industry defendants made a "reasonable inquiry" before seeking removal "since a cursory review of records of the small claims court shows that at least two of the actions that [the plaintiff]'s father filed were dismissed; that the third did not necessarily go to judgment." <u>Id.</u> at 4-5. Based on this assertion, the plaintiff contends the industry defendants "had no reasonable basis to believe that jurisdiction was deficient in the state court" and that, despite this, the industry defendants filed a notice of removal to "harass [the plaintiff] and to prevent her from seeking redress for her injuries allowed by the proper interpretation of Wisconsin law." <u>Id.</u> at 6. The plaintiff claims that "[i]t is difficult to fathom that [the industry defendants are] not fully aware of the legal deficiency of [their] argument" before saying "[i]t is so baseless as to be precisely what Rule 11 contemplates as worthy of sanctions." <u>Id.</u> at 9.

The plaintiff further alleges that "[i]n addition to being not grounded in legal authority, the [n]otice [for removal] is replete with misstatements and

27

inaccuracies, if not overt lies." Id. The plaintiff then provided, and extensively

argued, the following five grounds to support sanctions:

> (1) "Applicable law does not require [the plaintiff] to show that she will fully pursue her case against the Landlord Defendants; nevertheless, the facts support that she has and will[;]
>
> (2) "[The industry defendants] improperly conflate[] [the plaintiff] with her attorneys[;]"
>
> (3) "[The industry defendants'] claim [the plaintiff's] lawyers have engaged in discovery in her case since 2007 is erroneous[;]"
>
> (4) "Defendants have previously made repeated attempts to pass liability onto landlords[;]"
>
> (5) "Plaintiff has not had her claims litigated previously so as to make her an improper party."

Id. at 9-13. The plaintiff concluded her motion for sanctions by asking the

court to award her reasonable expenses, including attorney's fees attendant to

bringing and arguing the motion. Id. at 13.

> 2.    *Defendant's Response (Dkt. No. 38)*

The industry defendants reaffirm that their notice of removal is "based on

undisputed facts and governing precedent." Dkt. No.38 at 5. The industry

defendants contend that they made a reasonable inquiry into the facts

underlying this case and that the "[p]laintiff never identified any new evidence

that [the industry defendants] failed to discover when deciding to remove." Id.

at 15. The industry defendants explain that—despite serving interrogatories

asking the plaintiff and the landlord defendants about prior litigation—they

had to independently locate the court records for the cases brought by the

28

plaintiff's father against the landlord defendants.[10] Id. at 7-9. The industry defendants state that they did not remove for an improper purpose but rather "to exercise [their] right to federal jurisdiction and to avail [themselves] of the Seventh Circuit's binding decision in *Burton*." Id. at 19. The industry defendants conclude by countering the plaintiff's "series of purported grievances and accusations," which they assert "mischaracterize or misrepresent [the industry defendant's] position and hypothesize alleged motives and arguments found nowhere in the Notice of Removal." Id. at 20.

C.    Analysis

The industry defendants' notice of removal does not warrant sanctions under Rule 11. Although the industry defendants' argument for removal was unsuccessful, it was not frivolous. Given the circumstances of this case, the industry defendants engaged in a reasonable inquiry into the relevant facts and law. Even after receiving from the plaintiff and the landlord defendants interrogatory responses regarding previous litigation that were less than directly responsive, the industry defendants discovered the three lawsuits

---

[10] The industry defendants served an interrogatory asking the plaintiff to identify whether she, "or another Person acting on Plaintiff's behalf, ever made a previous personal injury claim or instituted a legal proceeding of any kind." Dkt. No. 1-12 at 12-13. The plaintiff responded: "Plaintiff denies making any previous personal injury claim or instituting any legal proceeding of any kind, either on her own or by another Person acting on Plaintiff's behalf." Id. Similarly, the industry defendants served an interrogatory asking the landlord defendants to "[d]escribe any Legal Actions to which You have been parties pertaining to Your Properties, the Plaintiff, or the Plaintiff's parents." Dkt. No. 1-13 at 9. The landlord defendants responded, in part, with: "the Mitchells have commenced 104 eviction proceedings related to their properties. The Mitchells do not believe eviction proceedings were commenced against the Beals." Id.

previously brought by the plaintiff's father against the landlord defendants. These cases provided a foundation, although not a strong one, for the industry defendants' fraudulent joinder argument. See Cuna Mut. Ins. Soc., 443 F.3d at 560 ("Under Rule 11, . . . [t]he court must 'undertake an objective inquiry into whether the party or his counsel should have known that his position is *groundless*.'" (emphasis added, citation omitted) (quoting Nat'l Wrecking Co. v. Int'l Bhd. Of Teamsters, Local 730, 990 F.2d 957, 963 (7th Cir. 1993)). The court will deny the plaintiff's motion for sanctions.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion to remand. Dkt. No. 11.

The court **ORDERS** that this case be **REMANDED** to Milwaukee County Circuit Court.

Under 28 U.S.C. §1447(c), the court **AWARDS** the plaintiff costs and actual expenses incurred in responding to the notice of removal. The court **ORDERS** the plaintiff to submit her costs and expenses by the end of the day on **October 20, 2023**. The defendants may file a response to the plaintiff's submissions by the end of the day on **November 3, 2023**.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 35.

Dated in Milwaukee, Wisconsin this 3rd day of October, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

30