UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARRIEONA BEAL,

        Plaintiff,

v.

                              Case No. 22-cv-378-pp

ARMSTRONG CONTAINERS, INC., *et al.*,

        Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR FEES AND COSTS IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 54 (DKT. 43)

On June 2, 2021, the plaintiff sued Hattie and Jerry Mitchell (the landlord defendants) in Milwaukee County Circuit Court for negligence following the plaintiff's alleged exposure at the landlords' property to paint containing white lead carbonate. Dkt. No. 1-1 at 6-11. On August 24, 2021, the plaintiff amended the complaint to add The Sherwin-Williams Company and some industry defendants. Id. at 49-66. On March 25, 2022, the defendants filed a notice of removal, asserting that the plaintiff had fraudulently joined the landlord defendants to defeat diversity jurisdiction. Dkt. No. 1. The plaintiff timely filed a motion to remand, seeking costs and actual expenses under 28 U.S.C. §1447(c). On September 30, 2023, the court granted the plaintiff's remand motion and awarded the plaintiff the costs and actual expenses occurred in removal, after finding that the industry defendants' notice of removal lacked an "objectively reasonable basis." Dkt. No. 42 at 23. The court

1

recounted that the industry defendants had grounded their arguments for claim preclusion and fraudulent joinder on an "apparent judgment" while simultaneously asking the court to infer the existence of the judgment. Id. at 24. But the court ordered only defendant Sherwin-Williams (the defendant) to pay the costs and actual expenses because the other defendants simply had consented to removal. Id. at 25.

Less than a month later, based on the court's order awarding costs and expenses, the plaintiff filed the instant motion for actual costs and attorney's fees under Rule 54(d)(2)(A)(B). Dkt. No. 43. The plaintiff requests $94,896.50, an amount she calculated using the lodestar method of multiplying the reasonable number of hours worked by the market rate. Dkt. No. 43. The defendant opposes the motion on the ground that 28 U.S.C. §1447(c) restricts fee awards to actual outlays and that the plaintiff did not incur actual outlays because she is represented by contingency-fee counsel. Dkt. No. 47 at 2. According to the defendant, the proposed fees do not represent the market rate and lack the requisite detail about the work performed and the time spent opposing removal. Id. at 4-6. The defendant asked that if the court awards costs and fees, it reduce the requested award by at least 70% to be more in line with what the court previously has awarded in other cases. Id. at 7.

On June 4, 2025, the court issued an order reiterating its intent to award costs and actual expenses (including fees). Dkt. No. 49 at 2. The court explained that the plaintiff had not established that the hourly rate she had used is the local market rate and had not provided sufficient detail regarding

2

the expenses incurred. Id. The court ordered the plaintiff to supplement her motion for fees and costs. Id. at 8.

The plaintiff since has filed a supplemental brief, dkt. no. 50, and four declarations, dkt. nos. 51-54, in support of her motion. The defendant filed a supplemental response, dkt. no. 55, and declaration, dkt. no. 56. The court will grant the plaintiff's motion but will order a reduced award of $45,424.50.

I. **Plaintiff's Motion for Fees and Costs (Dkt. No. 43)**

The plaintiff initially filed an eight-page memorandum seeking costs and expenses totaling $94,896.50 for the work of three different firms that opposed the removal. Dkt. No. 43. In reviewing the plaintiff's submissions, the court observed that each of the firms requested a different amount: Motley Rice asked for $58,592 in fees and $769.92 in costs; Warshafsky, Rotter, Tarnoff & Bloch asked for $22,475 in fees and $302.08 in costs; and Peter Earle asked for $12,757.50 in fees. Dkt. No. 49. The court determined that the plaintiff had failed to support the motion because, in seeking rates as high as $1,250 per hour, the plaintiff had made no attempt to establish a market rate. Id. at 6. The court also found that the plaintiff had failed to explain what work was performed, by whom or how it was different from similar charges by other attorneys. Id. at 8.

A. Plaintiff's Supplemental Brief (Dkt. No. 50)

In her supplemental filings, the plaintiff argues that her attorneys' experience and practice areas are "unique and distinct from traditional billable market rate in the Wisconsin-area." Dkt. No. 50 at 2. The plaintiff says that her

3

initial declarations included attorney rates ranging from $460 to $1,250 per hour, which reflect hourly rates of other attorneys involved in complex civil litigation across the United States. Id. at 3 (citing State of Wash. v. McKesson Drug Corp. et al., Case No. 19-2-06975 (King Cnty. Super. Ct. Sept. 1, 2021). The plaintiff argues that the local market rate in Wisconsin also supports her fee request. Id. She cites a social security case in which the court found that the hourly rate "of over $1,000 to be high but not unprecedented," quoting Mentecki v. Colvin, Case No. 14-cv-1110, 2019 WL 3323874 (E.D. Wis. July 24, 2019). Id. Alternatively, the plaintiff agrees to be bound by the hourly billable rates charged by defendants' counsel of the respective same or similar experience. Id. at 5.

To the extent the court asked for clarification about the work performed by Bob McConnel, Laura Holcomb, Victor Harding, Jennifer Thiermann and Christy Thyson, the plaintiff filed supplemental declarations explaining that their work "accounts for legal research, local practice remand research, review of underlying papers, editing, strategy meetings, compilation of exhibits and/or cases, drafting, cite-checking, investigative fact research, and other general matters performed in related to the Plaintiff's Remand papers." Id. at 6.

 B. Defendant's Supplemental Response (Dkt. No. 55)

The defendant urges the court to deny the motion (or to substantially reduce the award) for two reasons. First, the defendant argues that the plaintiff had no intention of ever proceeding against the landlords who, the defendant alleges, were named in the lawsuit only to avoid diversity jurisdiction. Dkt. No.

4

55 at 6. Second, the defendant argues that the plaintiff has failed a second time to "support her motion for fees and expenses." Id. The defendant says that the supplemental submission, which "withdraws some expenses that counsel previously swore under oath were related to opposing removal," makes it impossible to respond with particularized objections. Id. The defendant asserts that the court cannot assess the amount of time spent opposing removal and the amounts that were unrelated to removal or spent on "duplicative" or "administrative" tasks (for which fees are not allowed). Id. at 6-7. The defendant cites other fee petitions filed with this court, resulting in awards of approximately $12,000. Id. at 7 (citing O'Boyle v. Unifin, Inc., Case No. 23-cv-870-pp (E.D. Wis.) at Dkt. No. 18 (seeking $11,700); Currier v. Lawgix Lawyers, LLC, Case No. 21-cv-419-pp, 2022 WL 11826245, at *2 (E.D. Wis. Oct. 20, 2022) (awarding $12,067.50)).

The defendant argues that—despite alleging millions in damages—the plaintiff did nothing to develop the case against the landlords. Id. at 9. It says that the plaintiff did not "serve a single request for admission, interrogatory or document request on either Hattie or Jerry Mitchell," and that she never served a single subpoena on the City of Milwaukee or other third party for information about the Mitchell's properties. Id. at 9. The defendant argues that the plaintiff reported on December 6, 2024—a year after the case had been remanded—that she had executed a Pierringer release with the Mitchells, agreeing to indemnify and hold harmless both landlords against any judgment the non-settling

5

tortfeasors would obtain against them. Id. For this reason, the defendant asks the court to award $0 in fees and expenses.

The defendant points out that the plaintiff is seeking approximately $94,000 for filing an opening brief and reply over an approximately six-week period in 2022. Id. at 10. It asserts that nine individuals billed 131.05 hours at rates as high as $1,250. Id. The defendant identifies four cases from the Eastern District awarding fees under §1447(c) and provides a chart showing that the hourly rates in those cases ranged from $300 to $600. Id. at 11 (citing O'Boyle, Case No. 23-cv-870-pp), Sexton v. Target Corp. Svcs., Inc., Case No. 21-cv-1492-NJ, Masnak v. Optio Solutions, LLC, Case No. 21-cv-680-JPS, and Currier, Case No. 21-cv-419-PP). The defendant explains that the social security cases cited by the plaintiff arise under a different statute and do not support the plaintiff's arguments because the lodestar awards in each case were considerably lower. Id. at 12. The defendant adds that the plaintiff's only "new evidence" is the declaration of Mark Thomsen, who says that his hourly rate is $850 for himself and $250 for a second-year associate, "still far below" the rates the plaintiff proposes. Id. at 13. The defendant argues that Thomsen's declaration does not establish a market rate. Id.

The defendant asserts that it is the plaintiff's burden to establish the reasonableness of the hours billed and that the plaintiff's failure to provide discrete time entries, instead resorting to generic descriptions of the tasks performed, deprives the defendant and the court of the opportunity to conduct a meaningful review. Id. at 14-15. The defendant cites cases in which courts

6

have held that the use of "block billing" leaves the court unable to determine the reasonableness of the entries. Id. at 15 (citing FitzMark, LLC v. Rogers, Case No. 23-cv-00895, 2024 WL 758017, at *5 (S.D. Ind. Feb. 23, 2024); Specialty Contents Grp., LLC v. Service 247 of Ill., Inc., Case No. 24 C 4415, 2024 WL 4818438, at *5 (N.D. Ill. Nov. 18, 2024) Gonzalez v. Landes Foods, LLC, No. 18-cv-00196, 2018 WL 1626540, at *4 (S.D. Ind. Apr. 4, 2018); Marros ex rel. Marros v. Naperville Fam. Physicians, Inc., Case No. 01 C 2297, 2002 WL 370207, at *2-3 (N.D. Ill. Mar. 8, 2002)). The defendant argues that the plaintiff's supplemental submissions provide "zero evidence tying any discrete category of work to any amount of time," that each "merely recites the *total* hours a given individual supposedly spent on removal" offering "general descriptions" of the work performed and that "none ties any actual category of work to any actual date or actual hours spent." Id. at 15-16 (emphasis in original).

The defendant attacks the supplemental declaration of Attorney Victor Harding because Harding claims an unknown amount of time at $1,050 per hour for three trips to the Milwaukee County Courthouse; the defendant questions why three trips were necessary and why the task couldn't have been "delegated to a paralegal, non-billing administrative staff, or court-runner." Id. at 18. The defendant also questions an unknown amount of time Harding spent "researching the impact of remand on state court and the current status of the state court docket" and "whether the notice of removal was compliant with state and federal rules," asking why an associate could not have

7

performed this "basic" work or how this was different from the work performed by Attorney Fitzpatrick and her firm. Id. The defendant asserts that Harding also billed an unknown amount of time for "examining the current state court bench for potential of judge upon remand" and engaging in "scheduling discussions with the court," which the defendant says is unrelated to opposing removal. Id. The defendant points out that Harding's paralegal, Jennifer Thiermann, billed for time spent contacting the federal court clerk regarding filing requirements and state Circuit Court Judge Foley's clerk regarding a motion hearing date—both of which the defendant says are "seemingly unrelated to seeking remand," explaining that Judge Foley presided over the case prior to removal. Id. at 19.

Regarding the supplemental declaration of Attorney Fidelma Fitzpatrick, the defendant argues that she references "frequent meetings with the drafting team to provide guidance and oversight" but doesn't specify the time spent on the meetings, the dates of the meetings or the identities and roles of the participants. Id. at 20. According to the defendant, Fitzpatrick and her partner, Mr. McConnell, both billed for meetings to discuss the same matters. Id. The defendant argues that senior counsel Jennie Scudder-Levin, associate Hannah Werner and paralegal Laura Holcomb appear to have contributed to the "same efforts" without any explanation as to who performed what tasks. Id. The defendant asserts that Fitzpatrick also billed for clerical and administrative tasks that, if included in the time billed, are non-compensable, such as assisting in the transfer of Levin's handwritten notes and briefing to Word,

8

formatting briefs and citations and applying revisions upon secondary review of attorneys. Id. at 21.

Finally, with respect to the supplemental declaration of Attorney Peter Earle, the defendant argues that the descriptions of work performed still are lacking necessary details. Id. at 21. The defendant says that Earle's declaration does not provide time entries and his generic descriptions are not associated with any breakdown of time. Id. at 16. According to the defendant, the descriptions of the work Earle performed lack the detail necessary for meaningful objection and judicial review, including a review of how much of the time he spent "reviewing the removal papers," "investigating [the] factual claims" and "consult[ing] with co-counsel" was "duplicative or excessive." Id. at 21.

According to the defendant, the "cumulative deficiencies—unsupported rates, lack of specificity, excessive and duplicative billing, and improper inclusion of clerical work—compel denying Plaintiff's request in its entirety or, at a minimum, imposing a substantial across-the-board reduction to bring any award in line with recent Section 1447(c) awards this Court has granted." Id.

    C.    Analysis

When a case is remanded due to improper removal, the court may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). The court previously found that the defendant lacked an objectively reasonable basis for removal, and that an award of costs and actual expenses was appropriate in

9

this case. The defendant now argues that the post-remand record substantiates that it had an objective basis for removal and that the plaintiff had no intention of proceeding against Hattie and Jerry Mitchell. Dkt. No. 55 at 6. According to the defendant and the documents attached to a supplemental declaration, the plaintiff's attorney never served discovery on the Mitchells, conducted a "perfunctory deposition" and then released both the Mitchells (who are now divorced). Id.; Dkt. No. 55-1.

The defendant has not filed a motion to reconsider and provides no authority to support its position that the court can—and should—revisit its award under §1447(c) based on post-remand developments in state court. More important, the court found the defendant's position on removal to be objectively unreasonable because the defendant grounded its arguments in claim preclusion—and, by extension, fraudulent joinder—based on an "apparent judgment" that it asked the court to infer existed. Dkt. No 42 at 24.

In a footnote, the defendant argues that it offered two bases for removal and that the court did not rule on one of them—whether the plaintiff joined the Mitchells to avoid diversity jurisdiction. Dkt. No. 55 at 7-8, n.1. The defendant cites Reis v. Robbins, Case No. 14-cv-00063, 2015 WL 846526, at *4 (S.D. Ind. Feb. 26, 2015), for its holding that a court must deny expenses if any one basis for removal was reasonable. But this court addressed the "intent to prosecute" argument on pages 18-20 of its order, observed that the defendant had failed to identify an example of the alleged failure to serve discovery and recounted that the court had not set a discovery schedule. Dkt. No. 42 at 20. The court

10

rejected the defendant's arguments because they were not supported by the record and there was not an objectively reasonable basis for its arguments *at the time of remand.*

That leaves the court with the task of deciding what are "just costs and actual expenses, including attorney fees, incurred as a result of the removal." 42 U.S.C. §1447(c). "Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856 (7th Cir. 2009). "A reasonable hourly rate is the local market rate for the attorney's services." Eagle F. v. Phyllis Schlafly's Am. Eagles, 498 F. Supp. 3d 1024, 1047 (S.D. Ill. 2020). "The best evidence of an attorney's market rate is his or her actual billing rate for similar work." Id. (citing Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 639-40 (7th Cir. 2011)). A court otherwise may rely on "evidence of rates charged by similarly experienced attorneys in the community for similar work and evidence of fee awards the attorney has received in similar cases." Id. (citing Johnson v. GDF, Inc., 668 F.3d 927, 933 (7th Cir. 2012)). The court may make its own rate determination if the fee applicant—who has the burden to establish his or her market rate—fails. Johnson, 668 F.3d at 933.

The court ordered the plaintiff to supplement the record because the plaintiff had given the court no basis for establishing the lodestar. Dkt. No. 49 at 7. The plaintiff had spoken generally about fee requests being approved by

other courts, specifically the King County Superior Court in Seattle, Washington, but had failed to persuade the court that a billing rate of over one thousand dollars an hour for a particular attorney was the actual market rate. Id. In response to the court's order to supplement the record, the plaintiff argues that the rates are "recognized for contingency fee counsel, including Motley Rice, LLC, in other comparable complex civil litigation matters across the nation," but continues to cite to the same King County Superior Court case from the state of Washington. Dkt. No. 50 at 3 (citing State of Wash. v. McKesson Drug Corp., et al., No. 19-2-06975). The plaintiff also cites fee awards granted in social security cases under the Equal Access to Justice Act. Awards under the Equal Access to Justice Act are irrelevant in this case, where the court awarded costs and expenses incurred in response to removal under 28 U.S.C. §1447(c). The EAJA sets a statutory maximum fee award of twenty-five percent of total past due benefits for work performed before the Social Security Administration and on appeal. 42 U.S.C. §406(b)(1)(A). No such statute applies in this case.

The plaintiff's most persuasive evidence of a prevailing market rate in the Eastern District of Wisconsin is the supplemental declaration of Mark Thomsen, who has not appeared in this case but states that he has practiced law in Wisconsin for thirty-eight years and that his firm has offices in Eau Claire, Madison and Milwaukee. Dkt. No. 54 at ¶¶3-4. Among other things, Thomsen's practice involves complex civil litigation with multiple parties and he is paid on a contingency fee basis. Id. at ¶4-5. Thomsen says that his hourly

12

rate for non-contingency fee matters is $850, and his associate's rate is $250 for a two-year associate (the same for an experienced legal professional). Id. at ¶6. Thomsen says that these fees have not been challenged and that a typical §1983 case in the Western District resulted in approval by the court of a 40% attorney fee on a $2,350,000 settlement. Id. at ¶7 (citing G.J. and the Estate of Johnsrud, *et al.* v. Wood County, *et al.*, Case No. 20-cv-108). Thomsen believes that his rates are "very reasonable for the Wisconsin-area market." Id. at ¶8.

Meanwhile, the defendant points to four cases from this district in which courts have awarded fees ranging from $300 to $600 per hour under 28 U.S.C. §1447(c). Dkt. No. 55 at 11. In Currier, this court approved a fee request with a billing rate of $425 to $550 per hour where the defendant did not object to the rates and counsel provided an affidavit attesting that the rates fell within the range charged by class action attorneys in Wisconsin. Currier, 2022 WL 11826245, at *2. In its 2022 decision in Currier, the court did not hold that $550 was the upper limit of the market rate in Wisconsin. Here the plaintiff has the burden of establishing the prevailing market rate and has not supported her request for rates that exceed those to which Thomsen has attested in his declaration. The court will adopt the rates proposed by Thomsen as the ceiling for the plaintiff's billable rates.

After reviewing the reasonableness of the hourly rates, the court reviews the number of hours and whether they were incurred in seeking remand. Section 1447(c) "expressly limits fee awards to actual outlays—specifically, to 'any *actual* expenses, including attorney fees, *incurred*' (emphasis added)."

13

Wisconsin v. Hotline Indus., Inc., 236 F.3d 363, 367 (7th Cir. 2000) (quoting 28 U.S.C. §1447(c)). "In determining reasonable hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" Small v. Richard Wolf Medical Instruments Corp., 264 F.3d 702, 708 (7th Cir. 2001) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "The goal of fee-shifting is 'to do rough justice, not to achieve auditing perfection.'" Countryside Bank v. Sheikh, 853 F. App'x 3, 6 (7th Cir. 2021) (quoting Fox v. Vice, 563 U.S. 826, 838 (2011)).

Sherwin Williams objects to the plaintiff's use of block billing, but block billing "is not a prohibited practice." Farfaras v. Citizens Bank & Trust of Chi., 433 F.3d 558, 569 (7th Cir. 2006). "When reviewing block-billed entries, the court must consider whether the entries are 'sufficiently detailed to permit adequate review of the time billed to specific tasks' and whether that time was reasonably necessary." FitzMark, 2024 WL 758017 at *5 (quoting Cintas Corp. v. Perry, 517 F.3d 459, 469 (7th Cir. 2008)).

The court continues to have the same concerns it expressed in its earlier order. The plaintiff retained three different law firms on a contingency fee basis. The Motley firm's fee request of $58,592.00 (and costs totaling $769.92 for research and copying) is the largest of the three requests. Attorney Fidelma Fitzpatrick initially stated that she had reviewed the firm's time and expense records to prepare the declaration, dkt. no. 44 at ¶8, and the plaintiff added in a footnote that the itemized billing rates "are available on request," dkt. no. 43 at 4, n. 4. But when the court ordered the plaintiff to supplement the record,

14

the plaintiff did not produce any itemized billing, even though such information would have been helpful in analyzing the request.

The Motley's firm initial request provided the following information:

| Position | Name | Hours Billed | Billing Rate | Lodestar |
|---|---|---|---|---|
| Member | Fidelma Fitzpatrick | 10.90 | $1250 | $13,625 |
| Member | Bob McConnell | 2.50 | $1050 | $2,625 |
| Associate Attorney | Jennie Scudder-Levin | 45.40 | $800 | $36,320 |
| Associate Attorney | Hannah Werner | 7.80 | $460 | $3,588 |
| Paralegal | Laura Holcomb | .70 | $410 | $287 |
| Legal Assistant | Christy Tyson | 11.30 | $190 | $2,147 |
| | | | **TOTAL:** | **$58,592** |

Dkt. No. 44 at 2; 44-1. In her first declaration, Fitzpatrick says that she supervised the drafting of the briefs and conducted frequent meetings with the drafting team but says nothing about the work performed by the others. Dkt. No. 44 at ¶3. Her supplemental declaration explains that her partner, Attorney Robert McConnell, "reviewed the papers underlying Defendants' removal efforts, reviewed drafts of Plaintiff's Motion for Remand, and met with other team members, including Jennie Scudder-Levin, to review and discuss the substance of and arguments of Plaintiff's Motion for Remand and Reply." Dkt. No. 52 at ¶4. Fitzpatrick says that senior counsel Scudder-Levin was the primary drafter of the plaintiff's motion and reply but that associate Hannah Werner assisted Scudder-Levin and Fitzpatrick with legal research, cite checking and retrieving relevant documents from PACER and the Milwaukee

15

County Circuit Court eDocket. Id. at ¶5. Fitzpatrick adds that Laura Holcomb, a paralegal, "assisted with response strategy, including conversations with the drafters and sending factual research used to support the appropriateness of remanding the case back to state court." Id. at ¶6. Finally, Fitzpatrick states that Christy Tyson, an administrative assistant, transferred Scudder-Levin's handwritten notes and briefing to Word, formatting briefs and citations and applying revisions. Id. at ¶7.

The court will reduce the billing rates of Fitzpatrick and McConnell to $850, and those of Scudder-Levin, Werner and Holcomb to $250, because the plaintiff has offered nothing other than the declaration of Thomsen to establish the local market rate. The court will not award 11.30 hours for time spent transferring handwritten notes to Word or other administrative tasks. The court will award the Motley firm $24,875 in fees and $769.92 in costs.

The Warshafsky firm requested $22,475 in fees and $302.08 in costs ($104.15 for research and $197.93 for filing all motions, briefs and declarations). Attorney Harding initially provided the following exhibit:

| Position | Name | Hours Billed | Billing Rate | Lodestar |
|---|---|---|---|---|
| Senior Partner | Victor C. Harding | 16.2 | $1,050 | $17,010 |
| Paralegal | Jennifer Thiermann | 24.1 | $200 | $4,820 |
| | | | **TOTAL:** | **$22,475** |

Dkt. No. 45-1. He provided no information about the type of work performed.

In his supplemental declaration, Harding says nothing about local market rates. Dkt. No. 53. He explains that he spent his time "researching the

16

impact of remand on state court and the current status of state court dockets," examining "the current state court bench for potential of judge upon remand" and researching "whether the notice of removal was compliant with state and federal rules." Id. at ¶3. He says that he made three trips to the Milwaukee County Courthouse to "locate information regarding the Defense's claimed prior judgments related to [the plaintiff's] father, Darnell Beal's alleged prior lawsuits related to lead poisoning." Id. at ¶4. He also says that he participated in "frequent meetings with the entire Plaintiff team to provide guidance and insight into relevant Wisconsin law and filing rules, as well as input on the Motion for Remand and Reply." Id. Harding adds that his paralegal, Jennifer Thiermann, "assisted with ECF filings," drafted Harding's first declaration for his review, drafted and filed the magistrate judge jurisdictional form, drafted a "Request for Status Conference, or in the Alternative, a Ruling on the Motion for Remand" and "participated in frequent meetings with the entire Plaintiff team to provide insight into relevant client specific information based upon her role as main contact point person with [the plaintiff] and her father." Id. at ¶5. Harding explains that Thiermann "contacted both the Federal Court clerk regarding filing requirements and Circuit Court Judge Foley's clerk to request a motion hearing date be held." Id. Again, Judge Foley was the state court judge who presided over the case prior to removal.

As best this court can tell, the only work incurred regarding *removal* was (1) researching whether the notice of removal complied with the rules; (2) investigating whether there was information at the Milwaukee County

17

Courthouse relative to the prior judgments referenced by the defendant in the motion; and (3) meetings with co-counsel in which Harding provided guidance and insight into Wisconsin law and filing rules. Id. at ¶4. The court will cap Harding's billable rate at $850 and keep Thiermann's rate at $200. The court also will reduce Harding's requested hours from 16 to 12 to account for work not related opposing the removal: researching state court judges and current state court dockets. Thiermann spent time on tasks unrelated to opposing removal, including filing a magistrate judge jurisdiction form, contacting the state court about a hearing and filing a request for a status conference. Based on the same concerns that the court expressed regarding Tyson's billing and the lack of information provided by the plaintiff, the court will not award the time requested by Thiermann. The court will award the Warshafsky firm $10,200 in fees and $302.08 in costs.

Finally, Peter Earle requested $12,757 for 12.15 hours between March 25, 2022 and May 12, 2022, for his participation in "responding to and opposing" the removal from Milwaukee County Circuit Court. Dkt. No. 46 at ¶4. In his supplemental declaration, he adds that he investigated the factual claims, consulted with co-counsel, and drafted, edited and reviewed the briefs filed by the court. Dkt. No. 51 at ¶4. Earle avers that he has eliminated all unnecessary and duplicative charges or those not related to the remand. Id. For the reasons discussed above, the court finds that Attorney Earle has not established a local market rate of $1,050, will reduce his hourly rate to $850 and award him $10,327.50.

## II. Conclusion

The court **GRANTS** the plaintiffs' motion for attorney fees and costs, dkt. no. 43, but reduces the total award from $94,896.50 to $46,474.50.

Dated in Milwaukee, Wisconsin this 21st day of October, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**